(61 Misc. Rep. 190.)

ALEXANDER v. AMERICAN ENCAUSTIC TILING CO.

(Supreme Court, Special Term, New York County. November 28, 1908.)

1. PATENTS (§ 129*)—LICENSES—VALIDITY OF PATENT—COLLATERAL ATTACK.

One acquiring a license to manufacture and sell a patented article under a contract stipulating that, on the patent being declared invalid by any final judgment of any court of competent jurisdiction of last resort, the agreement shall terminate, and that the licensee will recognize the validity of the patent and will take no action impairing the interests of the patentee, etc., cannot, so long as the patent has not been declared invalid by a court of competent jurisdiction of last resort, collaterally attack its validity.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 184; Dec. Dig. § 129.*]

2. PLEADING (§ 8*)—CONCLUSION.

In an action for royalties due under a contract whereby a patentee granted the right to manufacture and sell the patented article, an averment in the answer that the patentee did not use reasonable measures to prevent nonlicensees from using the patent is a conclusion.

[Ed. Note.—For other cases, see Pleading, Cent. Dig. §§ 12, 13, 19; Dec. Dig. § 8.*]

3. PATENTS (§ 209*)—LICENSES—VALIDITY.

A license to manufacture and sell a patented article, which stipulates that it shall not be an exclusive license, but that the patentee may license

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

others to manufacture and sell the article, etc., does not grant a monopoly, so as to be against public policy.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 300; Dec. Dig. § 209.*]

4. PATENTS (§ 211*)—LICENSES—CONSTRUCTION.

One acquiring a right to manufacture and sell a patented article under a contract stipulating that the patentee shall not be responsible for any damage from an infringement of the patent, etc., takes the risk of infringements.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 310; Dec. Dig. § 211.*]

5. PATENTS (§ 219*)—LICENSES—ACTIONS—DEFENSES.

In an action for royalties under a contract granting a license to manufacture and sell a patented article, defendant may show by a proper plea, without attacking the validity of the patent, that he did not manufacture the article.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 219.*]

6. PATENTS (§ 212*)—LICENSES—BREACHES—ACTIONS FOR DAMAGES.

Where a patentee, who granted a license to manufacture and sell the patented article, did not use reasonable means for the protection of the patent, the licensee might, by rescinding and alleging and proving the necessary facts, recover damages.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 312–314; Dec. Dig. § 212.*]

Action by Elmer E. Alexander, under the firm name and style of Davis, Reid & Alexander, against the American Encaustic Tiling Company. Demurrers to defenses and counterclaims sustained, with leave to answer over.

Esselstyn & Ketchem, for plaintiff.
Flammer & Flammer, for defendant.


DAYTON, J. Action to recover $4,682.50 and interest for royalties accrued under an agreement between plaintiff's assignor and the defendant, dated July 7, 1898, pursuant to which Davis, Reid & Alexander, patentees, granted to the defendant a license to make and sell circular tile covered by specified letters patent during the term thereof, and any improvements thereon; the agreement, however, to continue for a period of ten years from the date thereof, subject to the provisions and conditions therein contained. The amended answer admits the agreement, contains certain denials, and for a first defense alleges the invalidity of the patents; that such invalidity was not known to the defendant at the time of making the agreement, and did not become known until shortly prior to February 21, 1906, at about which time defendant gave notice of refusal to pay further royalties. For a second and separate defense it is alleged that subsequently to the agreement numerous other manufacturers used the invention in open defiance thereof, with the knowledge of and without protest on the part of the patentees, whereby defendant was evicted from all rights in said manufacture. For a third and separate defense it is alleged that the patentees did not use reasonable measures for the protection of the patents, and thereby violated said agreement, and that numerous other

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

manufacturers were permitted to use said invention with the knowledge of, and without protest or license from, said patentees. For a first counterclaim it is alleged that defendant, believing that said patents furnished protection, paid the rates provided in the agreement; that the patents were not for the making of circular tile or pasting said tile on paper, but were for an alleged design for a tile and an alleged improvement in tiling; that since the agreement defendant has not utilized the design for a tile or improvement on tiling, but only manufactured circular tile, pasted them on paper, and sold such tile since March 14, 1902; that defendant's payments, aggregating $7,-673.87, were received by the patentees with knowledge that they were made solely for making and selling circular tile; and that defendant was not using the design or improvement in tiling covered by such patents. Wherefore said payments were by mistake and without consideration. For a second counterclaim it is alleged that numerous parties other than plaintiff, and not licensees, were permitted extensively and successfully to use the alleged invention in open defiance thereof, with the knowledge of and without protest from the patentees or their assigns; that since March 14, 1902, defendant paid plaintiffs as royalties $7,673.87, which payments were for the right to use said inventions, exclusive only of the right of plaintiffs under, and those who might be licensed pursuant to, the terms of an agreement, which right was not obtained by the defendants; and that said payments were without consideration. Judgment is demanded for $7,673.87.

Plaintiff demurs to the first, second, and third defenses as insufficient in law upon the face thereof, and to the first and second causes of action or counterclaims as not stating facts sufficient to constitute a cause of action. The agreement gave to plaintiff's assigns the right and option forthwith to terminate it upon notice, at which time all rights of the defendant should cease. No license to any other manufacturer was to be granted of the same extent at less than the rates specified. All tile manufactured or sold by the defendants to be stamped "patent" or "patented." Plaintiff's assignor expressly reserved the right to manufacture and deal in said circular tile, and said agreement was not to be "considered an exclusive license," and plaintiff's assignor was permitted "to license at its option any manufacturer other than defendant to make and sell circular tile under said patents or either of them." The third paragraph of the agreement reads as follows:

"The said party of the first part [plaintiff's assignor] hereby further agrees to use reasonable measures for the protection of each of said patents and to promptly inform the said party of the second part [defendant] of the nature of any litigation that may be instituted to determine the rights of the said party of the first part under either of said patents; but it is mutually agreed and understood between the parties hereto that said firm [plaintiff's assignor] shall in no way and in no event be held responsible to the said company [defendant] for any loss or damage which said company may sustain in case of an infringement of said patents or either of them by any party or parties, or in the event that said patents or either of them shall hereafter be declared invalid."

The fourth paragraph provides that, if the patents or either of them shall be declared invalid by any final judgment of any court of competent jurisdiction of last resort, the agreement shall terminate; and,

further, the defendant covenants to recognize the validity of the pat-
ents, to protect plaintiff's assignor thereunder, and to take no action
directly or indirectly to the impairment or detriment of the interests
of said patentee. A contract giving a licensor greater scope or more
thoroughly binding the licensee could hardly be devised. Defendant
made payments under the agreement for about seven years, and so
long as the patents are not declared invalid by a court of competent
jurisdiction of last resort their validity may not be attacked collateral-
ly by the defendant during the term or under the conditions of this
contract.

The averment that plaintiff did not use "reasonable measures" to
prevent others not licensees from using their patents is a conclusion. No
monopoly was intended to be granted, nor is the agreement void as
against public policy. Defendant expressly took the risk of infringe-
ments. No remedy for the reformation or annulment of the instru-
ment for fraud or a misrepresentation or other causes is sought. It
seems to me that, while this contract is in force, defendant is bound
to its performance, unless, irrespective of the validity of the patents,
its breach by the plaintiff is alleged and shown. If defendant did not
manufacture the articles alleged in the complaint, it may so show by a
proper plea without attacking the patents. If plaintiff has not used
reasonable measures for the protection of these patents (assuming
that the word "protection" means the use of said articles by others
than licensees; i. e., infringers), defendant may by rescinding and al-
leging and proving necessary facts recover damages.

In my opinion, the demurrer to each of the defenses and to each of
the counterclaims should be sustained, with costs, with leave to the de-
fendant to answer over, without alleging the invalidity of the patents
or the manufacture thereunder by the plaintiff or other licensees.